# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE MARINE GROUP, LLC d/b/a MARINE GROUP BOAT WORKS; and NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PENNSYLVANIA.,<br><br>　　　　　　　　　　Plaintiffs,<br>　v.<br>MARINE TRAVELIFT, INC.; ALL-LIFT SYSTEMS, INC.; OLSON FABRICATION, INC.; EXACTECH, INC.; JUST IN TIME CORP.; SOUTHERN WEAVING CO.; and DOES 4-20,<br><br>　　　　　　　　　　Defendants. | Case No. 10cv846 BTM (KSC)<br><br>**ORDER GRANTING MOTIONS FOR DETERMINATION OF GOOD FAITH SETTLEMENT** |

　　Pending before the Court are motions for determination of good faith settlement filed by Plaintiffs The Marine Group LLC d/b/a Marine Boat Works ("Marine Group") and National Union Fire Insurance Co. of Pittsburgh, Pennsylvania ("National Union") and the following Defendants: Seymour Machine, Inc. ("Seymour") (ECF No. 155); Southern Weaving Company ("Southern Weaving") (ECF No. 157); Just In Time Corporation ("JIT") (ECF No. 158); and All-Lift Systems Inc. ("All-Lift") (ECF No. 159) (collectively, "Settling Defendants"). For the reasons set forth herein, the Court GRANTS all four motions.

//
//

## I. BACKGROUND

On January 19, 2009, Plaintiff Marine Group was lifting the motor yacht M/V Katrion ("Katrion") at its repair facility in Chula Vista, California, when the 600C boat hoist being used to lift the Katrion malfunctioned, causing the Katrion to hit a concrete sea wall. Together with its insurer National Union, Marine Group has brought claims against various manufacturers and distributors associated with the boat hoist. Defendants Marine Travelift, Inc. ("Marine Travelift"), which manufactured the actual hoist and designed the component parts, and Exactech, Inc. ("Exactech"), which manufactured the steel components of the hoist except for the sling link connectors and pins, are the sole non-settling defendants (collectively, "Non-Settling Defendants").[1]

On March 16, 2010, Plaintiffs filed this action in the Superior Court of the State of California for the County of San Diego. On April 21, 2010, Defendants removed the action to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1441(b), which the Court confirmed in its May 24, 2010 order (ECF No. 16) after the citizenship of the members of Plaintiff Marine Group as a limited liability company (LLC) was established.

On September 13, 2012, after the parties engaged in voluntary mediation, Plaintiffs filed a Notice of Partial Settlement (ECF No. 152), and the Settling Defendants filed their individual motions for determination of good faith settlement shortly thereafter. While these motions have been pending before the Court, Plaintiffs and Defendant Marine Travelift each filed motions for partial summary judgment, which were taken under submission on December 14, 2012.

The material terms of the collective settlement agreement ("Agreement") between Plaintiffs and Settling Defendants (collectively, "Settling Parties") provide:

- For an aggregate settlement sum of $1,000,000, each Settling Defendant will pay or cause to be paid to Plaintiff the following

---

[1] The roles of the Settling Defendants are as follows: All-Lift manufactured the component slings based on Marine Travelift's specifications; Southern Weaving fabricated the nylon webbing that All-Lift used to manufacture the slings; JIT distributed the sling link connectors and pins to Marine Travelift after arranging for Seymour to fabricate them according to Marine Travelift's specifications; and Seymour fabricated the sling link connectors and pins and sold them to JIT.

        amounts: $256,250.00 by All-Lift; $306,250.00 by JIT; $356,250.00 by Seymour; and $81,250.00 by Southern Weaving.

- The Settling Parties will release all present and future claims against one another, *including* waiving any presently unknown claims that may later arise pursuant to California Civil Code § 1542.[2]

- Each of the parties shall bear their own attorneys' fees and costs, except with regard to any action taken to enforce the Agreement, in which case the prevailing parties will be entitled to reasonable attorney fees.

- In return for the payments, Plaintiff will move to dismiss the case with prejudice as to the Settling Defendants.

- The Agreement is conditional upon a finding by this Court that "the settlement ... is in good faith, or any similar procedure or determination in the discretion of the Court, that will bar equitable cross claims against the SETTLING DEFENDANTS." Settlement Agreement § 3.5.

## II. DISCUSSION

The Settling Defendants seek a determination by the Court that their settlement with Plaintiffs is in good faith under California law. The Non-Settling Defendants advocate that the Court deny the Settling Defendants' motions for determination of good faith settlement as inapposite, arguing that this case falls under the Court's admiralty jurisdiction, not its diversity jurisdiction. In addition, with regard to Defendant All-Lift, the Non-Settling Defendants allege that at the outset of the lawsuit, the three initial defendants (Marine Travelift, All-Lift, and Olson Fabrication, Inc, who has since been dismissed) entered into a stipulation to preserve claims among the defendants. Therefore, Marine Travelift concludes, All-Lift's motion should be denied because a determination of good faith by this Court would bar any claims Marine Travelift might have as to contribution or indemnity based on comparative fault or negligence, see Cal. Civ. Proc. Code § 877.6(c), contrary to the stipulation.

In McDermott, Inc. v. AmClyde, 511 U.S. 202 (1994), the Supreme Court held that,

---

[2] Under Cal. Civ. Code § 1542, "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

once the factfinder has apportioned fault in an admiralty case where some of the defendants have already settled, the liability of non-settling defendants should be calculated so as to give them a credit for the settling defendants' proportionate share of responsibility for the total judgment. Id. at 209, 217. Under this approach, non-settling defendants are only liable for their proportionate share of the judgment, rather than the total award minus the settlement amount as required under California law. See Cal. Civ. Proc. Code § 877(a). The two calculation methods for the liability of non-settling defendants are called the "proportionate share" approach and the "*pro tanto*" approach, respectively.

The Ninth Circuit has recognized that "the general rule on preemption in admiralty is that states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not actually conflict with federal law or interfere with the uniform working of the maritime legal system." Pac. Merch. Shipping Ass'n v. Aubry, 918 F.2d 1409, 1422 (9th Cir. 1990) (emphasis and footnote omitted). While premature at this stage in the proceedings because the Non-Settling Defendants have not yet been found liable for any damages, the proportionate share approach required under federal maritime law and the *pro tanto* approach are clearly mutually exclusive. Thus, since federal maritime law preempts state law where maritime law applies and the two conflict, the Court now addresses the basis for its jurisdiction.

In their opposition, the Non-Settling Defendants cite to Slaven v. BP Am., Inc., 958 F. Supp. 1472 (C.D. Cal. 1997), in which the district court denied a motion for determination of good faith settlement under California law because the court found that federal maritime law, not state law, applied to the consolidated cases, and so the motion "ask[ed] th[e] court to apply the incorrect law." 958 F. Supp. at 1477. Notwithstanding that the Slaven decision is not binding on this Court, there is a key difference, namely that in Slaven, all the parties *agreed* that the consolidated cases fell under the court's maritime jurisdiction. See id. at 1479. In fact, the main causes of action in Slaven were federal, with the court allowing the state law claims under its supplemental jurisdiction. See id. at 1477, 1479. Thus, the question facing the court in Slaven was whether a good faith settlement determination could

be made *solely as to the state law claims*, or whether federal maritime law applied to the settlement in its entirety. Id. at 1476. The settling parties had already "concede[d] that federal settlement law applie[d] to the settlement of the *federal claims*." Id. at 1477 (emphasis in original). In stark contrast, the parties here dispute the basis for this Court's jurisdiction in the first instance.

The Ninth Circuit has noted that "saving clause claims[3] brought in state court are not removable under 28 U.S.C. § 1441 absent some other jurisdictional basis, such as diversity or federal question jurisdiction." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1069 (9th Cir. 2001) (citing Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 371, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); Alleman v. Bunge Corp., 756 F.2d 344, 345-46 (5th Cir.1984)). This case was removed to federal court on diversity grounds, and the courts, including the Ninth Circuit, have generally respected a plaintiff's right to bring maritime claims in state courts. See Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987) ("Trentacosta's election to invoke jurisdiction on the 'law side' of the court (as opposed to the 'admiralty side', 28 U.S.C. § 1333(1)), therefore, precludes our treating his maritime claims as admiralty claims under Rule 9(h)."); Alleman v. Bunge Corp., 756 F.2d 344, 345-46 (5th Cir. 1984) (holding that, because defendant could only remove for diversity, plaintiff's action was not in the court's admiralty jurisdiction). Therefore, this Court finds that this case falls under its diversity jurisdiction, and turns to the merits of the Settling Defendants' motions for determination of good faith settlement.

Under Cal. Civ. Proc. Code § 877.6(a)(1), "[a]ny party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . ." If the court determines that the settlement was made in good faith, such determination "shall bar any other joint tortfeasor from any further claims against the

---

[3] The "savings clause" refers to 28 U.S.C. § 1333, which provides in pertinent part, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*" 28 U.S.C. § 1333(1) (emphasis added).

settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. Proc. Code § 877.6(c). A party asserting the lack of good faith bears the burden of proof on that issue. Cal. Civ. Proc. Code § 877.6(d).

In Tech-Bilt, Inc. v. Woodward-Clyde & Assoc., 38 Cal. 3d 488, 499 (1985), a case in which the good faith nature of the settlement was disputed, the California Supreme Court set forth a number of factors to be considered by the court in determining whether a settlement is in good faith, including: (1) a rough approximation of plaintiffs' total recovery and the settlors' proportionate liability; (2) the amount paid in settlement; (3) the allocation of settlement proceeds among plaintiffs; (4) a recognition that the settlor should pay less in settlement than he would if he were found liable after trial; (5) the financial condition and insurance policy limits of settling defendant; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.

The California Court of Appeal has held that it is incumbent upon the court deciding the motion for good faith settlement to consider and weigh the Tech-Bilt factors only when the good faith nature of a settlement is disputed. City of Grand Terrace v. Superior Court, 192 Cal. App. 3d 1251, 1261 (1987). "That is to say, when no one objects, the barebones motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient." Id.; see also Hernandez v. Sutter Medical Center of Santa Rosa, 2009 WL 322937 (N.D. Cal. Feb. 9, 2009) (granting motion for good faith settlement without performing Tech-Bilt analysis because there were no objections); Bonds v. Nicoletti Oil, Inc., 2008 WL 4104272 (E.D. Cal. Sept. 3, 2008) (declining to weigh Tech-Bilt factors because there was no opposition to the motion for good faith settlement).

Here, while the Non-Settling Defendants filed oppositions to the motions for determination of good faith settlement, the oppositions – all materially the same, with the exception of All-Lift – do not contest the good faith nature of the settlement, but only the basis for the Court's jurisdiction, as discussed above. Accordingly, the Court does not deem it necessary to engage in a comprehensive Tech-Bilt analysis.

The Court has reviewed the terms of the settlement and is satisfied that the settlement is in good faith. There is no evidence of collusion or fraud, and the amount to be paid by the settling defendants under the settlement agreements is reasonable, where the exact cause of the boat hoist malfunction is contested and the Settling Defendants all contributed in some way to the manufacture and/or distribution of the component parts of boat hoist but were not responsible for the ultimate design, manufacture, or sale of the hoist to Plaintiffs. It remains unclear on the record before the Court how much fault is attributable to the plaintiff boatyard and to the manufacturers and distributors of the travel lift and its components.

As to the stipulation entered into by Marine Travelift and All-Lift to preserve their claims against one another, the stipulation provides that all causes of action that the defendants may have against one another, including cross-claims, counter-claims, and/or cross-complaints, are "preserved and not waived by any Defendant's failure to plead such causes of action at any time prior to the dismissal of the underlying lawsuit. . . ." (See ECF No. 160-1 at 2.) The stipulation also waives any defenses based on failure to timely file such claims. (Id. at 3.) It does not address what happens in the event that some but not all of the parties to the stipulation settle.

As the Court reads the stipulation, it prevents the defendants' waiving their claims against one another by not pleading any such claims immediately. But as a stipulation entered into amongst themselves, it does not prevent the *Court* from entering a stipulated order that may affect such claims. Indeed, the Court notes that the third party to the stipulation, Olson Corporation, Inc., has already been dismissed from the lawsuit with prejudice by joint motion (ECF No. 110). More importantly, the Court finds that All-Lift's entering into this stipulation does not affect the analysis of whether All-Lift's settlement agreement with Plaintiffs is in good faith.

Thus, the Court concludes that the settlement is in good faith and **GRANTS** all four of the Settling Defendants' motions.

### III.  CONCLUSION

For the reasons discussed above, the Settling Defendants' motions for determination of good faith settlement (ECF Nos. 155, 157, 158, & 159) are **GRANTED**.  The settlements reached between Plaintiffs and Defendants All-Lift, Southern Weaving, JIT, and Seymour are found to be in good faith within the meaning of Cal. Civ. Proc. Code § 877.6, and the Non-Settling Defendants are barred from pursing any claims against these Settling Defendants for equitable comparative contribution or comparative indemnity based on comparative negligence or comparative fault.

**IT IS SO ORDERED.**

DATED:  January 30, 2013

BARRY TED MOSKOWITZ, Chief Judge
United States District Court